ADDISON BRILL et al., Appellants, *v.* JEROME TUTTLE, Respondent.

Where, for a valuable consideration received from the payee, an order is drawn upon a third person, payable out of a particular fund then due or to become due from him to the drawer, the delivery of the order to the payee operates as an assignment *pro tanto* of the fund; the drawee is bound, after notice thereof, to apply the fund, as it accrues, to the payment of the order, and the payee may by action compel such application.

Where a draft is drawn generally, to be paid by the drawee in the first instance on the credit of the drawer, the designation by the drawer of a particular fund out of which the drawee may subsequently be reimbursed, does not convert the draft into an assignment of the fund, and the payee can have no action thereon against the drawee, unless he duly accepts.

Where a particular fund to accrue *in futuro* is designated in the instrument, and the language thereof is ambiguous, evidence of the surrounding circumstances may be resorted to for the purpose of determining whether the intention was that the payment should only be made out of the designated fund, or whether the direction to pay was intended to be absolute, and the fund was mentioned only as a means of reimbursement.

A. & Co. being engaged in repairing a house for defendant, for a valuable consideration, executed and delivered to plaintiffs the following instrument, directed to defendant:

"Pay Brill & Russell three hundred dollars, and charge same to our account, for labor and materials performed and furnished in the repairs

and alterations of the house in which you reside, in the village of Mo-
hawk." In an action upon the instrument, it appeared that the work was
nearly done when the instrument was executed; the testimony was conflict-
ing as to the amount then due. Previous to its delivery to the plaintiffs, one
of them, with the drawer, called upon the defendant and requested him
to accept an order for the $300, or give plaintiffs a note or some security
therefor, which he declined to do, immediately thereupon the order in
question was given, this defendant refused to pay or to recognize. *Held,*
that the order did not necessarily require a construction that it was a
request to advance the sum specified; that the direction therein, in con-
nection with the surrounding circumstances, indicated the intent to have
been simply to direct payment of such sums as were or might become due
to the drawers on the account for repairs, up to the amount specified; that
thus construed, the order was an assignment of so much of the fund; and
that a voluntary payment by defendant to the drawers, after notice of
plaintiffs' rights, was in his own wrong, and was no defense.

*Brill* v. *Tuttle* (15 Hun, 289), reversed.

*Shaver* v. *W. U. T. Co.* (57 N. Y. 459), *Kelly* v. *The Mayor* (4 Hill, 263), dis-
tinguished.

(Argued April 12, 1880; decided September 21, 1880.)

APPEAL from order of the General Term of the Supreme
Court in the fourth judicial department, reversing a judgment
in favor of plaintiffs entered upon a verdict. (Reported below,
15 Hun, 289.)

This action was brought upon a written instrument, a copy
of which is set forth in the opinion, wherein also the material
facts are stated.

*Thomas Richardson* for appellants. As it was clear from
the conversation between the defendant and Ackerman, and
from the defendant's admission to Russell, that there was more
than sufficient back to meet this order when it was first pre-
sented; whether due or even earned at that time is immate-
rial, if it became due afterward. (*Field* v. *Mayer*, 2 Seld.
179.) The order operated as an equitable assignment. (*Lewis*
v. *Berry*, 64 Barb. 593; *Parker* v. *City of Syracuse*, 31 N. Y.
376; *Alger* v. *Scott*, 54 id. 14; *Munger* v. *Shannon*, 61 id.
251; *Risley* v. *Smith*, 64 id. 576; *Ehrichs* v. *De Mill*, 75 id.
370.) The intention of the parties, when reasonably evidenced

by the instrument, ought to control; and if there is any ambiguity, the circumstances of the case and the relations of the parties may be shown in aid of the true interpretation. (*Shuttleworth* v. *Bruce*, 7 Robt. 162, 163; *Blossom* v. *Griffen*, 3 Kern. 574; *Lewis* v. *Berry*, 64 Barb. 593; *Row* v. *Dawson*, 1 Ves. Sen. 332; *McLeod* v. *Snee*, 2 Strange, 762.) The order in suit was non-negotiable, and may amount to an equitable assignment. (*Ex parte South*, 3 Swanston, 392, 471; *Shaver* v. *W. U. Tel. Co.*, 57 N. Y. 459.)

*Amos H. Prescott* for respondent. The instrument upon which this action is brought is a bill of exchange, and was not an equitable assignment, and the defendant could not be charged upon it without proof that he accepted it; in writing, and it being a bill of exchange, it could not operate as an assignment. (3 R. S. [5th ed.], § 6, p. 68; *Shaver* v. *Western Union Telegraph Co.*, 57 N. Y. 463; *Kelley* v. *Mayor of Brooklyn*, 4 Hill, 264; Chitty on Bills, 158 [Am. ed. of 1839]; *Hall* v. *City of Buffalo*, 1 Keyes, 193; 2 Abb. Ct. of App. Dec. 301; *Luff* v. *Pope*, 5 Hill, 413, 417; *Harris* v. *Clark*, 3 N. Y. 93; *Mandeville* v. *Welch*, 5 Wheat. 277; *Parker* v. *City of Syracuse*, 31 N. Y. 376; *Hutter* v. *Ellwanger*, 4 Lans. 8; *Alger* v. *Scott*, 54 N. Y. 14; *Munger* v. *Shannon*, 61 id. 251.) The distinction that has always existed between a bill of exchange and a check, or order, or draft, drawn on and payable out of some particular or specified fund, still remains. (*Attorney-General* v. *Continental Life Insurance Co.*, 71 N. Y. 325; *Reid* v. *Pryon*, 20 Alb. L. J. 53; *Hutter* v. *Ellwanger*, 4 Lans. 13; *Ehrich* v. *DeMill*, 8 Weekly Dig. 87; Chitty on Bills, 55; *Cook* v. *Satterlee*, 6 Cow. 108; *Marine Bank* v. *Jauncy*, 3 Sandf. 260; Edw. on Bills, 144; *McLeod* v. *Luce*, 2 Strange, 762; *Hoyt* v. *Lynch*, 3 Sandf. 328; *Pope* v. *Luff*, 5 Hill, 413; *N. Y. and V. Bank* v. *Gibson*, 5 Duer, 574; *Cowperthwaite* v. *Sheffield*, 3 N. Y. 243; *Winter* v. *Drury*, 3 Sandf. 230; *Shuttleworth* v. *Bruce*, 7 Robt. 161; *Loonie* v. *Hogan*, 9 N. Y. 435; *Lant & Cook* v. *Bank N. America*, 49 Barb. 221.)

RAPALLO, J.   The difficulty in this case consists rather in ascertaining the true construction to be put upon the order, than the legal principles applicable to the case.   There can be no doubt as to the rule that when, for a valuable consideration from the payee, an order is drawn upon a third party and made payable out of a particular fund, then due or to become due from him to the drawer, the delivery of the order to the payee operates as an assignment *pro tanto* of the fund, and the drawee is bound, after notice of such assignment, to apply the fund, as it accrues, to the payment of the order and to no other purpose, and the payee may, by action, compel such application.   It is equally well established that if a draft be drawn generally upon the drawee, to be paid by him in the first instance, on the credit of the drawer and without regard to the source from which the money used for its payment is obtained, the designation by the drawer of a particular fund, out of which the drawee is to subsequently reimburse himself for such payment, or a particular account to which it is to be charged, will not convert the draft into an assignment of the fund, and the payee of the draft can have no action thereon against the drawee unless he duly accepts.   In all cases, therefore, in which a particular fund, to accrue *in futuro* is designated in the draft, and the language is ambiguous, the turning point is whether it was the intention of the parties that the payment should be made only out of the designated fund, when or as it should accrue, or whether the direction to the drawee to pay was intended to be absolute, and the fund was mentioned only as a source of reimbursement, or an instruction as to book-keeping.

The order in this case was in the following words:

"MOHAWK, *August* 31, 1876.

JEROME TUTTLE:

Pay Brill & Russell three hundred dollars and charge the same to our account for labor and materials performed and furnished in the repairs and alterations of the house in which you reside, in the village of Mohawk.

J. P. ACKERMAN & SON."

If at the time this order was drawn the drawers had to their credit on the designated account, the sum of three hundred dollars or more, and this fact was understood by the parties, there would be no difficulty in holding that the intention was to transfer that credit or balance *pro tanto* to the plaintiffs, by substituting them in the place of the drawers as the recipients thereof. It would be fair to presume in that case that it was intended that the payment should be made out of the balance of account in the hands of the drawee, and not on the general credit of the drawer, and that the direction to charge the payment to that account was an appropriation of such balance to the extent necessary to meet the order. The complaint alleges, and when the plaintiff rested the allegation was sustained by proof, that when the order was drawn, August 31, and when it was presented, September 1, there was a sufficient amount due and admitted to be due from the drawee on the account mentioned in the order, to pay it. The motion for a nonsuit was therefore properly denied.

The evidence as to the amount due on the account, and as to the admission of the defendant, was, however, controverted by evidence on his behalf, and that question was submitted to the jury, with the instruction that the plaintiffs were entitled to recover any moneys owing by the defendant to the drawers on the 1st of September, 1876, the day of the presentation of the order to him, and at any time thereafter before the commencement of this suit, on the account mentioned in the order, which were not otherwise appropriated on the 1st of September, and under this charge the jury found for the plaintiff the sum of $243.

This instruction brings up the question whether, assuming that the fund to meet the order had not accrued and become payable when it was drawn and presented, the intention was that the payment should be made out of the fund when it should accrue, and that such payment should be charged, when made, against the sums thus becoming due, or whether it was intended as a direction to the drawee to advance the amount of the order without regard to the state of the account, and charge

the amount thus advanced to the drawers, and subsequently reimburse himself out of the sums to become due from him to the drawers on the specified account.

Considerable evidence was given of the circumstances surrounding the transaction, and of the negotiations between the parties preceding the giving of the order, and it may be that a mixed question of law and fact was presented which would have justified the court, if requested, in submitting the question of the intentions and understanding of the parties to the jury. But no such request was made ; and both parties requested the court to construe the order, and, therefore, if any question of fact was involved, it was submitted to the decision of the court. It was a conceded fact that the drawers had a contract with the defendant for repairing his house, for which they were to receive $1,100, and the defendant testified that there was no set time when it was to be paid ; that he expected it was to be paid when the work was completed, but advanced from time to time on account of labor, etc. The drawers also did extra work, to the amount of $93, and the job was nearly completed at the time the order was drawn. It was also an uncontroverted fact, that the drawers owed the plaintiffs $300 ; and before drawing the order, one of the drawers and one of the plaintiffs went together to the defendant, and the defendant testified that they then asked him to accept an order in favor of plaintiffs for $300, or give them a note or some security for the money, and that he refused. The testimony is conflicting, as to whether the amount then due from the defendant was admitted or discussed. Immediately after this conversation, the order in question was drawn and delivered to the plaintiff. It was several times presented to the defendant, but he refused to pay or recognize it. The amount due from defendant to the drawers, at or after the time of the presentation of the order, on the designated account, was severely litigated on the trial, and the verdict establishes that it was $243. It can hardly be conceived that, under these circumstances, any of the parties could have understood the order as a request to the defendant

to advance the $300, or any part of it, unless it was, or should become, due from him to the drawers on the contract and account for repairs, etc. Its language does not necessarily require such a construction, and, if ambiguous, should be interpreted with reference to the circumstances under which it was given. (73 N. Y. 335.) These are all inconsistent with such a view. The defendant had already absolutely refused to accept an order or give any note or security for the money due plaintiffs, and this was known to all the parties, and it would have been idle to draw a draft upon him for any other purpose than as a direction to pay to the plaintiffs such sums as were or might become due to the drawers on their account for repairs, etc. The direction in the order to charge the money to be paid thereon to that account, indicates, we think, sufficiently, in connection with the surrounding circumstances, that the payments were to be made out of the moneys due, or to become due, on the account, and all parties must have so understood it. If such is its true construction, it was an assignment of the fund within all the authorities. It was the plain duty, therefore, of the defendant, after notice of the plaintiffs' rights, to apply the money in the order, and if he afterward paid it over voluntarily to the drawers, he did so in his own wrong.

The case of *Shaver* v. *The Western Union Telegraph Company* (57 N. Y. 459) is relied upon as decisive of this case in favor of the respondent. The circumstances of that case were very peculiar.

The order was drawn in pursuance of a previous special arrangement, known to the payee, whereby the drawer was authorized to revoke it, and this was a controlling circumstance, which deprived it of the character of an absolute assignment—LOTT, Com., in delivering the opinion, says: "Notice was thereby given to the party who advanced money on the faith of the order, that it was not to be considered an absolute assignment of the sums that should become payable at the end of each month, but that it was subject to the right of Borst (the drawer) to revoke it." "Any and every person taking it

took it subject to the exercise of that right." The order was revoked by the drawer, and whatever else may have been said is unimportant, as this was the point upon which the case turned.

*Kelly* v. *Mayor* (4 Hill, 263) is also much relied upon. That was not the case of an order drawn by a creditor upon his debtor in favor of a third party, to be charged against the debt, but a negotiable draft drawn by the mayor of the city upon the treasurer, " Pay to A. L. or order $1,500 for award No. 7 and charge to Bedford road assessment." It was proved as a fact that at the date of the draft the treasurer had no funds in his hands arising from the Bedford road assessment, but such funds came to his hands afterward. It was held that the mere direction of the mayor to the treasurer to what account to charge the draft, did not indicate any intention to assign or appropriate any particular fund, and did not deprive the instrument of its character of a negotiable bill of exchange.

On the other hand expressions somewhat similar, used under different circumstances, have been held to constitute such an appropriation. In *Lowery* v. *Steward* (25 N. Y. 239) the language of the order was, pay " on account of twenty-four bales of cotton shipped you as per bill of lading per steamer Colorado." In this case the prior correspondence between the parties was also taken into consideration. In *Parker* v. *The City of Syracuse* (31 N. Y. 376) a contractor with the city for laying plank sidewalks drew his order on the comptroller: " Pay Parker & Wright $1,420 on plank-road and sidewalk accounts and charge to my account." In *Alger* v. *Scott* (54 N. Y. 14) an order was drawn by a landlord upon his tenant in August, 1866: " Pay to J. R. G. $346 and charge same to me, account of rent of house 13 Cheever place." No rent was due at the time. The tenant accepted the draft, but it was held that this order of acceptance constituted no defense to an action by the landlord for the rent due November, 1866, on the ground that the order was not a bill of exchange, but an equitable assignment of the rent, and as such void for want of consideration from the payee. In *Ehrichs* v. *De Mill* (75 N.

Y. 370) the language of the order was: "Pay to E. $400' and charge the same to my account of grading and paving Lexington avenue between Patchen and Broadway as per contract." The words "as per contract" are commented upon as indicating that the intention was that the payment should only be made as required by the contract. (See, also, *Munger* v. *Shannon*, 61 N. Y. 251, and *Risley* v. *Smith*, 64 id. 576.) It is useless to multiply references to authorities, for the question in all this class of cases is the same, and it must be determined according to the circumstances of each case. It is whether the draft is drawn upon the general credit of the drawee, or upon a particular fund. When the language is ambiguous, and the order not negotiable, as in the present case, the attendant circumstances may be shown to determine the intention and understanding of the parties. (*White's Bank* v. *Myles*, 73 N. Y. 335.)

The order of the General Term should be reversed and the judgment on the verdict affirmed.

All concur; FINCH, J., not on bench at argument.

Order reversed and judgment affirmed.